Muriel B. Kaplan, Esq. (SBN 124607)
Michele R. Stafford, Esq. (SBN 172509)
SALTZMAN & JOHNSON LAW CORPORATION
44 Montgomery St., Suite 2110
San Francisco, CA 94104
(415) 882-7900
(415) 882-9287 – Facsimile
mkaplan@sjlawcorp.com
mstafford@sjlawcorp.com

Attorneys for Plaintiffs,
NORTHERN CALIFORNIA FLOOR
COVERING INDUSTY WELFARE FUND,
et al..

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE NORTHERN CALIFORNIA FLOOR COVERING WELFARE FUND; STEVE HAVENS, Trustee,<br><br>    Plaintiffs,<br><br>v.<br><br>BRUCE FINISTER, individually and dba FINISTER FLOORING,<br><br>    Defendant. | Case No.: C07-5716 CW<br><br>**DECLARATION OF MURIEL B. KAPLAN IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Date:  August 21, 2008<br><br>Time:  2:00 p.m.<br><br>Courtroom: 2, 4th Floor<br>        1301 Clay Street<br>        Oakland, California<br><br>Judge:  The Honorable Claudia Wilken |

I, Muriel B. Kaplan, declare:

    1.    I am an attorney at law licensed to practice in the State of California, and am a shareholder of Saltzman and Johnson Law Corporation, attorneys for Plaintiffs herein.

    2.    Plaintiffs are an employee benefit plan and its trustee ("Trust Fund").

    3.    Plaintiff Welfare Fund has been authorized by the Resilient floor Covering Pension Fund to pursue collection of unpaid employer contributions on its behalf, as reflected in Section I, paragraph 1 of its Collection Procedure, a true copy of which is attached hereto as <u>Exhibit A</u>.

1

4.    Defendant entered into the valid Northern California Floor Covering Master Agreement for the period July 1, 2005 through June 30, 2008 ("Bargaining Agreement").  The Bargaining Agreement requires Defendant to make contributions to Plaintiff and other Trusts based on the hours worked by its employees. Relevant portions of that Bargaining Agreement are attached hereto as <u>Exhibit B</u>, made binding on Defendant. and incorporating therein the Master Trust Declaration for the Resilient Floor Covering Pension Fund ("Trust Agreement") and other Funds to which defendant is obligated to contribute.

5. The true copy of the signature page attached as Exhibit C is dated June 28, 2004.  That prior Agreement, continued past June 30, 2007 from year to year, in the absence of either parties' notice to the other, of its desire to "amend, modify or terminate this Agreement," as provided 3 paragraphs above defendant's signature on that page.

5.    Paragraph 43 at pages 21-23 of the Trust Agreement, a true and accurate copy of which pages are attached hereto as <u>Exhibit D</u>, obligates Defendants to timely pay monthly employee benefit contributions to Plaintiffs and provides that delinquent contributions incur ten percent (10%) liquidated damages.

6.    The Trust Agreement additionally provides that interest accrues on the combined total of unpaid contributions plus liquidated damages, at rates prescribed by the Internal Revenue Code Section 6621(a)(2), which is the quarterly annual underpayment rate. Attached hereto as <u>Exhibit E</u> is a true and accurate copy of the IRS Underpayments Rates including the relevant calendar quarters for April to June 2006 at 7% per annum, and July through December 2006, at 8% per annum.

7.    The Bargaining Agreement further obligated Defendants to pay all resulting attorneys' fees and costs incurred in the collection of delinquent amounts due, as shown in Section 5 of Article 19, at page 34, of <u>Exhibit B</u>.

2

8.      Attorneys' fees totaling $1,846.00 were incurred from May 27, 2008, through July 17, 2008, for conferences and correspondence with clients and Plaintiffs' administrator; for calculation of all amounts due, and for preparation of this Motion for Default Judgment, supporting declarations and proposed judgment.

9.      I personally have spent 4.4 hours from May 27, 2008, through July 17, 2008, in connection therewith, and my time was billed at the rate of $185.00 per hour, in connection with the above-stated activities regarding this matter.  Said attorneys fees were reasonably incurred in the total amount of $814.00.

10.     I am informed and believe that Michele R. Stafford, an associate in this firm, spent 1.3 hours from May 27, 2008, through July 17, 2008, in connection with the above stated activities regarding this matter, billed at the rate of $180.00 per hour.  Said attorneys fees were reasonably incurred in the total amount of $234.00.

11.     I am informed and believe that Shaamini A. Babu, an associate in this firm, spent .30 hours from May 27, 2008, through July 17, 2008, in connection with the above stated activities regarding this matter, billed at the rate of $175.00 per hour.  Said attorneys fees were reasonably incurred in the total amount of $52.50.

12.     I am informed and believe that Vanessa de Fábrega, a paralegal in this law firm, spent 7.1 hours from May 27, 2008, through July 17, 2008, in connection with the above stated activities regarding this matter, at the rate of $105.00 per hour.  Said fees were reasonably incurred in the total amount of $754.00.

13.     The costs that were incurred by prior counsel in connection with this action are:

| Filing Fee | $350.00 |
|---|---|
| Personal Service | $80.00 |
| **TOTAL** | **$430.00** |

14.     Attorneys' fees totaling $1,846.00 and costs totaling $430.00were incurred from May 27, 2008, through July 17, 2008.

15.     The default of Defendant was entered on February 25, 2008.

3

1    16.    To the best of my knowledge and belief, the Defendant is not an infant or

2  incompetent person, nor is Defendant in the military service of the United States of America.

3    I declare under penalty of perjury that the foregoing is true of my own knowledge and if

4  called upon I could competently testify thereto.

5    Executed this 17th day of July, 2008, at San Francisco, California.

6

7    _____/s/_____

8    Muriel B. Kaplan

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>PROOF OF SERVICE</u>

I, the undersigned, declare:

I am a citizen of the United States and am employed in the County of San Francisco, State of California.  I am over the age of eighteen and not a party to this action.  My business address is 44 Montgomery Street, Suite 2110, San Francisco, California 94104.

On July 17, 2008, I served the following document(s):

**DECLARATION OF MURIEL B. KAPLAN IN SUPPORT
OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT**

on the interested parties in said action by placing a true and exact copy of each document in a sealed envelope with postage thereon fully prepaid, in a United States Post Office box in San Francisco, California, addressed as follows:

> **Bruce Finister
> dba Finister Flooring
> 6728 Saddle Rock Court
> Stockton, California 95210**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this 17th day of July, 2008, at San Francisco, California.

_____/s/_____
Vanessa de Fábrega

1

**DECLARATION OF M. KAPLAN IN SUPPORT
CASE NO.: C07-5716 CW**

# EXHIBIT A

## RESILIENT FLOOR COVERING PENSION FUND

### Collection Procedure

### I.    Coordination with Local Area Health Plans

The Board of Trustees has determined that in certain geographic areas it is cost effective to allow the local area health plan to pursue collection of unpaid employer contributions, because the local area trustees have more immediate and detailed knowledge of the employer and its financial condition. Therefore, the Board will allow these local area health plans to pursue collection of delinquent contributions and to design and conduct the payroll audit program for their respective areas, and the Resilient Floor Covering Pension Fund will share in the cost of such collection procedures, subject to the following rules and restrictions:

1.    **Authorization of Local Area Trustees.** The Board of Trustees recognizes that in general the trustees of each local area health plan can more efficiently and effectively investigate the circumstances of delinquent employers operating in their respective areas, and are consequently better able to determine whether or not a particular delinquency is collectible and, if so, the most favorable terms for such collection. The Board of Trustees therefore has authorized the local area trustees to enter into installment payment agreements with delinquent employers on behalf of the Resilient Floor Covering Pension Fund and/or to waive contributions, liquidated damages and interest otherwise due from employers to the Resilient Floor Covering Pension Fund, subject to the following conditions:

**a.**  Any installment payment agreement or waiver shall comply with the requirements of Department of Labor Prohibited Transaction Class Exemption 76-1.

**b.**  Any agreement to waive contributions, liquidated damages and/or interest due to the Resilient Floor Covering Pension Fund must be approved by the Board of Trustees of the Resilient Floor Covering Pension Fund, unless the total amount of such waiver is less than $5,000. To simplify the task of obtaining Board approval, the Board has authorized a subcommittee to act on its behalf on matters arising between regular Board meetings. The subcommittee is comprised of the Chairman, Co-Chairman, Secretary, and Treasurer for the Pension Fund. The names, addresses and telephone numbers of the appropriate subcommittee members are available at the administrative office.

In making decisions about collections on behalf of the Resilient Floor Covering Pension Fund within the above guidelines, local area health trustees may utilize their own established procedures, and may delegate decision making authority to a subcommittee or to their local area collection counsel.

2.    **Payroll Audit Program.** The payroll audit program for each local area must

# EXHIBIT B

# Northern California Floor Covering Master Agreement

*between*

## DISTRICT COUNCIL No. 16

*and*

## NORTHERN CALIFORNIA FLOOR COVERING ASSOCIATION

### AND

## FLOOR COVERING ASSOCIATION OF THE CENTRAL COAST COUNTIES



July 1, 2005 – June 30, 2008


® 73
Zablocki Printing Co.

# ARTICLE 12
## VACATIONS

1. The parties agree that, contributions to the Holiday and Vacation Fund shall be transmitted to the current administrator who thereupon will deposit the money in the bank. These contributions shall be made to a bank in the name of each individual worker and the bank shall set individual accounts for each employee. Interest on the accounts shall be paid to the employee.

2. Vacations shall be taken at a time mutually agreed upon by the Employer and employee.

3. The contribution rate shall be set forth in Schedule A and shall be paid on all hours worked.

# ARTICLE 13
## STEWARDS

### 1. Appointment

The District Council shall be empowered to appoint and remove all shop and/or job stewards as required in any shop or job of an Employer signatory to this Agreement. Stewards shall be competent Journeypersons currently employed by the Employer at the time of appointment.

### 2. Duties

Such duties shall include monitoring the provisions of this Agreement, checking all working cards of Foreman, Journeyperson and Apprentices and to check all applications, working permits, and to report the same by the use of Steward's Report to the

Business Representative of the Union. Steward shall work with the tools as well as doing the duties assigned by the Union.

### 3. Reporting

The Steward shall report to the Business Representative of the Union and to the Employer or his Representative, any and all violations of this Agreement. All matters of consequence pertaining to jurisdiction, alleged grievances due to unfair treatment by the Employer, are to be reported to the Union for action as may be deemed necessary.

### 4. Layoff

The Steward shall be the last employee laid off provided he/she is qualified and able to perform the available work.

# ARTICLE 14
## JOINT APPRENTICESHIP AND TRAINING TRUST

1. There has been established an Apprenticeship Agreement and Declaration of Trust Fund. The Union and the undersigned Employers agree that the Northern California Floor Covering Joint Apprenticeship and Training Trust Fund as the established Trust Fund referenced to in Article 14 of this Collective Bargaining Agreement. Effective on the date of this Agreement, all contributions for Apprenticeship Training referenced in Schedule A will be remitted to the Northern California Floor Covering Joint Apprenticeship and Training Trust Fund. The detailed basis of the administration of the Apprenticeship Fund shall be pursuant to the agreements and trust declarations adopted by the Associations and the Union,

(b) Supervise the training of Apprentices under a program as defined by the Trustees and Trust Document.

(c) Supervise the training and upgrading of Journeymen. More specifically, the Committee shall develop and provide Journeyman upgrade and training programs that increase the knowledge, skills and job opportunities for the Journeymen.

(d) The JATC shall develop a database of all active members skill classifications. This will be accomplished by conducting a survey of the Employers and active membership, on an ongoing basis, to ascertain the members skill classification within the various applications of our craft.

(e) Supervise the testing of Apprentices and Journeymen.

(f) To establish rules, regulations, and training standards for the apprentice.

(g) To implement disciplinary action within the rules and regulations.

(h) The JATC will determine through discussions with the appropriate governing agencies the length and breadths of training required for floor covering installers and also determine the costs of funding such a training program for Journeymen and installers.

3. Apprentices may be employed only in accordance with standards as set forth by the Joint Apprenticeship and Training Committee.

4. No Apprentice shall be hired by any Employer until both the shop and the Apprentice have been approved by the Joint Apprenticeship Committee.

5. The contribution rate shall be set forth in Schedule A and shall be paid on all hours worked.

- 27 -

---

which shall be binding upon all Employers' signatory to or bound by this Agreement. The Employer hereby agrees to be bound as a party to the terms and provisions of the trust establishing the Apprenticeship Trust Fund, and said Agreement is made a part hereof by reference. Employer acknowledges receipt of the Trust Agreement for said fund, and irrevocably appoints and designates the present Employer trustees and their successors as its agents.

2. The employment and supervision of personnel to administer the program shall be the responsibility of the trustees of the Apprenticeship and Training Fund.

3. The contribution rate shall be set forth in Schedule A and shall be paid on all hours worked.

4. We hereby establish under this Collective Bargaining Agreement a provision for affiliation with the IUPAT Joint Apprenticeship and Training Fund (IUPAT-JATF) and further provide a minimum contribution of five cents ($.05) per hour for each Journeyman and Apprentice employee covered under this Agreement.

## ARTICLE 15
## JOINT APPRENTICESHIP AND
## TRAINING COMMITTEE

1. The Joint Apprenticeship and Training Committee shall consist of an equal number of members appointed respectively by the Associations, Independent Floor Covering Employers and the Union.

2. The duties of the Joint Apprenticeship and Training Committee may include, but are not limited to:

(a) Selection of applicants as provided for in selection procedures registered and approved by the State of California;

- 26 -

## ARTICLE 16
## HEALTH AND WELFARE FUNDS

There has been established a Health and Welfare Fund. The detailed basis of the administration of the Health and Welfare Fund shall be pursuant to the Agreement and trust declarations adopted by the Associations, Independent Floor Covering Employers and the Union, which shall be binding upon all Employers signatory to or bound by this Agreement.

The Employer hereby agrees to be bound as a party to the terms and provisions of the trust establishing the Health and Welfare Trust Fund, and said Agreement is made part hereof by reference. The Employer acknowledges receipt of the trust agreement for said fund, and irrevocably appoints and designates the present Employer trustees and their successors as its agents.

The contribution rate shall be set forth in Schedule A and shall be paid on all hours worked.

## ARTICLE 17
## INDUSTRY FUND

There has been established two (2) Regional Industry Funds for the purpose of improving industry relationships within and related to the floor covering industry. The detailed basis of the administration of the new Industry Fund shall be pursuant to the agreement and trust declaration adopted by the Floor Covering Associations; Central Coast Counties Floor Covering Association and the Northern California Flooring Association which shall be binding upon all Employers signatory to or bound by this Agreement.

2. Any fund merger agreement must establish equal trustee representation from the two (2) areas of Region 1 Employers whose primary place of business is located within the counties of Alameda, Contra Costa, Napa, Solano, San Mateo, San Francisco, Marin, Sonoma, Mariposa, Lake and Mendocino, and Region 2 Employers whose primary place of business is located within the counties of Santa Clara, San Benito, Santa Cruz and Monterey.

3. The creation of said Industry Funds, and trust declarations and their administration and organization shall be solely the responsibility of the Employers and they shall be operated for the improvement and betterment of the industry which shall include but not be limited to, studies which may be made of the economic and other factors affecting the entire floor covering industry in the area within the scope of this Agreement. No part of the contributions to said funds shall be used for partisan political or anti-union activity.

4. No part of the contributions to the Industry Funds shall be used, either directly or indirectly, for collective bargaining and/or negotiations of collective bargaining agreements which are inimical to the Union. The Industry Funds shall be used and expended solely for the purposes and objectives set forth in the various agreements and declarations of trust, establishing the Industry Funds. The Industry Funds referred hereto shall be audited at least once annually by a certified public accountant, and copy of said audit shall be available.

5. The Employer's contribution to the Industry Fund shall be twenty three cents ($0.23) per hour worked and shall be set forth in Schedule A.

# ARTICLE 18
# RETIREMENT PLANS

There are two (2) retirement plans established and recognized under this Agreement into which Employers may contribute to provide a retirement benefit for their employees. Participation by an employee in one or both of these plans depends upon the employee's classification as described in Section 2 herein. The two (2) retirement plans are the following:

(a) There has heretofore been established and there is presently in effect the RESILIENT FLOOR COVERING PENSION FUND and the master trust declaration for the RESILIENT FLOOR COVERING PENSION FUND dated December 24, 1958, as amended (hereinafter referred to as Plan A). The Employer hereby agrees to be bound as a party by all the terms and provisions of the Master Trust Declaration for the Resilient Floor Covering Pension Fund, restated as of June 12, 1976, as amended, establishing the Resilient Floor Covering Pension Fund, and said Agreement is made a part hereof by reference. Each Employer party hereto acknowledges receipt of the Trust Agreement for said Fund.

(b) There has heretofore been established and there is presently in effect the CENTRAL COAST COUNTIES FLOOR COVERING INDUSTRY PENSION FUND and the Trust Agreement for the CENTRAL COAST COUNTIES FLOOR COVERING INDUSTRY PENSION FUND effective August 1, 1990, as amended (hereinafter referred to as Plan B). The Employer hereby agrees to be bound as a party by all the terms

• 30 •

and provisions of the Trust Agreement for the Central Coast Counties Floor Covering Industry Pension Fund, and said Agreement is made a part hereof by reference. Each Employer party hereto acknowledges receipt of the Trust Agreement for said Fund.

2. There are three (3) classifications of employees: Journeymen, Apprentice and Floor Covering Handler whom are covered under this Agreement for the purpose of determining the pension contributions to Plan A and Plan B. Applications for classification designations shall be submitted to the Administrator and classification designations processed by the Administrator. The classification designation shall be as follows:

(a) Class A employees shall consist of all employees whose total retirement contribution provided for in Schedule A shall be contributed to Plan A.

(b) Class B employees shall consist of all employees whose total pension contribution provided for in Schedule A shall be divided between Plan A and Plan B.

(c) Each employee shall submit to the Trust Fund Administrator any classification change no later than December 2nd of each year, unless the employee is dispatched to their first job at which time he or she shall be entitled to designate a classification. The Trust Fund Administrator shall make the appropriate allocation to Plan A, or to Plan A and Plan B, as designated by the employee. In no event shall a classification change be implemented except by proper notification from the employee to the Trust Fund Administrator, and no more than one (1) classification change may be effected during any contract year.

• 31 •

3. There has heretofore been established and there is presently in effect the RESILIENT FLOOR COVERING EXCESS BENEFIT PLAN and the Trust Agreement for the RESILIENT FLOOR COVERING EXCESS BENEFIT PLAN effective August 1, 1990, as amended. The Employer hereby agrees to be bound as a party by all the terms and provisions of the Trust Agreement for the RESILIENT FLOOR COVERING EXCESS BENEFIT PLAN, and said Agreement is made a part hereof by reference. Each Employer party hereto acknowledges receipt of the Trust Agreement for said Fund.

4. Said plans shall continue to be jointly administered through Boards of Trustees established pursuant to said declarations of trust as the same may have been heretofore amended and may hereafter be amended from time to time, until the expiration thereof. Each Employer, signatory hereto, irrevocably appoints and designates the Employer trustees as his agents. Said declarations of trust as so amended shall be binding upon each Employer, party hereto, and the Union, party hereto, and the benefits thereof shall insure to the persons qualifying there under.

5. The Contribution rate shall be set forth in Schedule A and shall be paid on all hours worked.

## ARTICLE 19
## TRUST FUND ADMINISTRATION

1. In the event that a signatory Employer becomes delinquent in the payment of Trust Fund obligations, said contractor shall be given a ten (10) day notice by the Trust Fund Administrator to correct said delinquency, and if said delinquency is not corrected as specified, the Employer shall, in addition to correcting said delinquency and prior to being authorized

to receive dispatch of employees under this Agreement, said Employer shall post with the Trust Funds Administrator a Surety Bond, cash or other security acceptable to the Trust Fund Trustees, in the amount of Ten Thousand Dollars ($10,000) for 0-10 employees, Thirty Thousand Dollars ($30,000) for 11-30 employees and Sixty Thousand Dollars ($60,000) for 31 employees and up, to guarantee any deficiency of such employer in the payment of wages, health and welfare and other fringe benefits or monetary obligations that are duly imposed under the provisions of this Agreement for a period of twelve (12) months. The number of employees per employer shall be based on the average number of employees reported to the Trust Funds during the preceding three (3) month period.

2. The Trust Fund heretofore established for Health and Welfare, Pensions, Apprenticeship, Industry Fund and the procedures for Dues Check-Off are hereby continued for each of the Trusts and procedures existing under the collective bargaining agreements between the Associations, independent floor covering Employers and the Union. Each Employer party hereto acknowledges receipt of the Trust Agreements for each of said Trust Funds.

3. The terms of such Trust Agreements are incorporated herein by reference.

4. Each Employer signatory hereto irrevocably designates the Central Coast Counties Floor Covering Association and the Northern California Floor Covering Association as his attorney-in-fact for the appointment and removal of Management Trustees for each of the Trusts. All new trustees appointed by the Employers shall be signatory to the collective bargaining agreement and report a minimum of three hundred sixty (360) hours of employee benefits during any 90 day (3 month) period. All Trustees representing labor shall be appointed in accordance with District Council No. 16 Bylaws.

5. The individual Employer further and additionally agrees to pay all reasonable costs and attorney's fees necessary and incurred to collect any amount due hereunder in the event of the default in performance by the Employer hereunder, including collection of sums due hereunder by demand or suit on the surety bond.

6. Either the Union or the Trustees of a Trust established or existing for receipts of monies collected hereunder may commence action in law or equity to enforce the collection of any amounts due or that become due under this Agreement or any Trust Agreement established pursuant to the terms of this Agreement.

7. All contributions required hereunder are due and payable on the fifteenth (15th) day of the month following the month in which the work is performed. Contributions received after the fifteenth (15th) day of the month following that in which the work was performed shall be delinquent. If reports or payment of all contributions are not received by the twentieth (20th) day following the end of the calendar month in which the work was performed, the default of performance by the Employer shall be a substantial breach of this Agreement, and the following remedies and action may be taken within the discretion of the Union.

(a) This Contract and Agreement may be suspended without further notice whatsoever following twenty-four (24) hour written notice from the Union or the Trust Fund to said defaulting Employer.

(b) The Union may remove and recall all employees of the defaulting Employer pursuant to the terms of this Agreement and require that no employees shall work for said defaulting Employer unless said Employer is reinstated.

8. All reasonable expenses and cost of litigation incurred by the Union or the trustees, or any duly authorized agent thereof, as well as all reasonable attorney(s)' fees in the event of litigation shall be an additional liability and shall be payable by the defaulting Employer.

9. The parties mutually recognize the fact that the failure or refusal of an Employer to comply with this Agreement in a timely manner creates an unfair advantage, endangers the continued purpose of this Agreement, and defeats the purposes for which this Agreement has been made through the collective bargaining process. Because it would be extremely difficult and impractical, if not impossible to fix the actual damages for breach apart from the actual costs and expense of accounting, collection and litigation, the Employer signatory agrees to pay all penalties as prescribed in the applicable trust document in regards to all such breaches.

10. All contributions to Trust Funds shall be payable to the designated depository in one (1) check.

## ARTICLE 20
## NO LOCK-OUT OR STRIKE CLAUSE

1. During the term of this Agreement, there shall be no lock-out by the Employer, nor any strike, sit-down, refusal to work, stoppage of work, slowdown, retarding or production or picketing of the Employer on the part of the Union or its representative, or on the part of an employee of the Employers unless provided for elsewhere in this Agreement.

# EXHIBIT C

revert to subsistence as outlined in Section 4 below.

### 4.    SUBSISTENCE

(a)    Each employee will be allowed sixty-five dollars $65.00 per day, in advance, on a separate check for meals and expenses on the job warranting subsistence (unusually high living expenses excepted).

Article 28, Marking of Vehicles, shall be deleted

Article 35 shall be amended to read as follows:

This Agreement shall be in full force and effective from June 1, 2004 through June 30, 2007 and shall continue thereafter from year to year unless either party serves written notice upon the other at least sixty (60) days prior to July 1 of any subsequent year of its desire to amend, modify or terminate this Agreement.

All other terms and provisions of the Northern California Floor Covering Master Agreement shall apply. This addendum in no way effects the interpretation and/or application of any other Articles and/or Sections of the Northern California Painters Master Agreement.

### SIGNATORIES

This Agreement is made and entered into this first day June, 2004, by and between the Individual Employer signed below and District Council No. 16. By signing this document the undersigned Employer understands and agrees to all of its provisions.

District Council 16

Date    6-28-04

_____
Vince Echeverria

Business Representative


Employer    *Bruce Finster Flooring*

Date    6-28-04

_____
Signature

Title    Owner


✗ 30 days to secure business address

# EXHIBIT D

# MASTER TRUST DECLARATION

## *for the*

# RESILIENT FLOOR COVERING

### PENSION FUND

★

**EXECUTED DECEMBER 24, 1958**
And Amended June 12, 1962 and
February 7, 1964 and July 9, 1964 and
January 1, 1967 and June 12, 1976
and as of January 1, 1998

 23

# TABLE OF CONTENTS

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1    Pension Plan or Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2    Collective Bargaining Agreement . . . . . . . . . . . . . . . . . . . 5
3    Pension Fund or Fund . . . . . . . . . . . . . . . . . . . . . . . . . . 6
4    Board of Trustees or Board . . . . . . . . . . . . . . . . . . . . . . . 6
5    Employer or Individual Employer . . . . . . . . . . . . . . . . . . . 6
6    Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ESTABLISHMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ACCEPTANCE AND PURPOSE OF TRUST . . . . . . . . . . . . . . . . . 6
ADDITIONAL CONTRIBUTORS . . . . . . . . . . . . . . . . . . . . . . . 9
TRUSTEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
TRUSTEE DUTIES AND POWERS . . . . . . . . . . . . . . . . . . . . . . 26
IMMUNITY OF TRUSTEES AND OTHERS . . . . . . . . . . . . . . . . . 31
TERMINATION OF TRUST . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**Quorum:**    A quorum for the transaction of business shall consist of at least fourteen (14) Trustees and of the fourteen (14) Trustees, there shall be at least one representative either Employee Trustee or Union Trustee from at least five (5) of the six (6) jurisdictional areas, respectively, covered by one of the six (6) Unions signatory hereto. The Employer Trustees shall have one (1) vote and the Union Trustees shall have one (1) vote. The vote of either the Employer Trustees or the Union Trustees shall be determined by a majority of the Employer Trustees or the Union Trustees as the case may be. (Section 15, page 13)

amounts required by the aforementioned Collective Bargaining Agreement.

(b) The acceptance by the Trustees of any contributions shall not be an admission of the accuracy or sufficiency of the amount of such contributions, and the Trustees shall be entitled at any time to question the sufficiency of the amount thereof and/or the Trustees may, from time to time, cause an audit of the records of the Employer to be made by a Certified Public Accountant or by a Public Accountant selected by said Trustees and, if the statements of contributions due or contributions previously submitted by the Employer to said Trustees, or if the contributions previously made by said Employer to said Fund, shall be found to be less than the amount properly shown to be due by such audit, and such deficiency shall be an amount exceeding ten per cent (10%) of the total contributions due for the period of such audit, the Employer shall immediately pay the cost of such audit as well as the additional contributions therein shown to be payable by the Employer to the Fund. Otherwise, the cost of such audit shall be paid by the Trustees.

(c) The Employer shall keep safe and intact all of the Employer's books, records and other data, which in any wise bear upon or are required to establish in detail the amount of contributions due to the Fund for a period of four years from the date due of such contributions and shall, upon request of the Trustees, make the same available to the accountant selected as hereinabove provided for examination at any time during said four year period.

43. Any Employer who fails to pay contributions to the Fund required of him under a Collective Bargaining

– 21 –

Agreement within the time limits established by the
Trustees shall be considered to be delinquent. Upon such
delinquency and default the Union may consider the delin-
quency and default as a substantial breach of the Collective
Bargaining Agreement, and the Union may take such appro-
priate action as it deems necessary to enforce such payment,
notwithstanding any no strike clause in any current Col-
lective Bargaining Agreement and such action by the Union
shall not be deemed a breach of said agreement. In the
event the Union withdraws its members from said default-
ing Employer's employment, the said Employer shall be
liable for the earnings reasonably lost by his Employees
because of such action by the Union.

Insofar as payments by the Employer into this Fund are
concerned, time is of the essence. The parties recognize
and acknowledge that the regular and prompt payment of
amounts due by Employers to this Fund is essential and that
it would be extremely difficult, if not impracticable, to fix
the actual expense and damage to the Fund and to the cov-
ered Employees which would result from the failure of an
Employer to make such payments in full within the time
required. Therefore, it is agreed that the amount of damage
resulting from such failure shall be that described in the
Collective Bargaining Agreement.

In the event that the Collective Bargaining Agreement
does not describe the amount of damage from such failure
to timely pay the amount due to this Fund by an Employer,
then the amount of damages to the Fund and the Plan and
beneficiaries thereof resulting from any such failure shall
be presumed to be the sum of twenty-five dollars ($25.00)
per delinquency or ten (10%) of the amount of the

– 22 –

Contribution or Contributions due, whichever is greater, which amount shall be added to and become an integral part of the obligation to the Fund and shall become due and payable to the Fund as liquidated damages and not as a penalty. Delinquent Contributions, liquidated damages and any other sums owing to the Trust shall accrue interest until paid at the rates prescribed under Internal Revenue Code Section 6621(a)(2), or such other reasonable rates as the Board may from time to time establish. Interest shall accrue from the first day of the month after the month in which the obligation falls due."

44. The Trustees or the Union may sue said delinquent Employer in a court of competent jurisdiction recovering in said suit the delinquent payments and likewise a sum for reasonable attorneys' fees as determined by said Court, along with costs of suit, which shall be deemed to include the cost of any audit necessary to determine the proper amount due to the Fund. The recovery of the delinquent payments in either case shall be for the benefit of the Fund.

45. The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations to facilitate the proper functioning of this Trust, provided the same are not inconsistent with the terms hereof, or of the Collective Bargaining Agreements. The parties hereto agree that it shall be a requirement for continued participation in the Fund that each bargaining unit must contribute all retirement funds to the Fund which result from that bargaining unit, unless the Trustees concur in any deviation from this policy.

46. The Trustees are empowered to verify claims for the payment of benefits; determine the manner of payments of benefits; decide all questions relating to eligibility, service

– 23 –

# EXHIBIT E

*HTML Version Copyright 1998-2008 Daniel B. Evans. All rights reserved.*

# Interest on Underpayments and Overpayments of Federal Taxes

*(Current through September 2008)*

Interest on underpayments of federal tax must accrue interest, compounded daily, at rates published quarterly by the Internal Revenue Service in accordance with section 6621 of the Internal Revenue Code. (See Rev. Proc. 95-17, 1995-1 C.B. 556, for rules on how to calculate compounded interest.)

The rates for the last twelve calendar quarters are as follows:

Rates for Underpayments and Overpayments of Tax

| Calendar Quarter | Underpayments | Noncorporate Overpayments | Corporate Overpayments | Large Corp. Overpayments | Large Corp. Underpayments |
|---|---|---|---|---|---|
| Oct-Dec 2005 | 7% | 7% | 6% | 4.5% | 9% |
| Jan-Mar 2006 | 7% | 7% | 6% | 4.5% | 9% |
| Apr-Jun 2006 | 7% | 7% | 6% | 4.5% | 9% |
| Jul-Sep 2006 | 8% | 8% | 7% | 5.5% | 10% |
| Oct-Dec 2006 | 8% | 8% | 7% | 5.5% | 10% |
| Jan-Mar 2007 | 8% | 8% | 7% | 5.5% | 10% |
| Apr-Jun 2007 | 8% | 8% | 7% | 5.5% | 10% |
| Jul-Sep 2007 | 8% | 8% | 7% | 5.5% | 10% |
| Oct-Dec 2007 | 8% | 8% | 7% | 5.5% | 10% |
| Jan-Mar 2008 | 7% | 7% | 6% | 4.5% | 9% |
| Apr-Jun 2008 | 6% | 6% | 5% | 3.5% | 8% |

| Jul-Sep 2008 | 5% | 5% | 4% | 2.5% | 7% |
|---|---|---|---|---|---|

As can be seen from the above table, the interest rate that applies to overpayments of tax by individuals (and other noncorporate taxpayers) is the same rate that applies to underpayments of tax.

For corporations, the interest rate on overpayments of $10,000 or less is 1 point less than the rate for underpayments, and the interest rate on the portion of the overpayment in excess of $10,000 (i.e., "large" overpayments) is 2.5 points less than the rate on underpayments. Corporations also pay interest that is 2 points higher for "large corporate underpayments" (i.e., underpayments of more than $100,000).

The underpayment interest rates that have applied since 1987 are shown below.

Rates for Underpayments

| Year | First Quarter | Second Quarter | Third Quarter | Fourth Quarter |
|---|---|---|---|---|
| 1987 | 9% | 9% | 9% | 10% |
| 1988 | 11% | 10% | 10% | 11% |
| 1989 | 11% | 12% | 12% | 12% |
| 1990 | 11% | 11% | 11% | 11% |
| 1991 | 11% | 10% | 10% | 10% |
| 1992 | 9% | 8% | 8% | 7% |
| 1993 | 7% | 7% | 7% | 7% |
| 1994 | 7% | 7% | 8% | 9% |
| 1995 | 9% | 10% | 9% | 9% |
| 1996 | 9% | 8% | 9% | 9% |
| 1997 | 9% | 9% | 9% | 9% |
| 1998 | 9% | 8% | 8% | 8% |
| 1999 | 7% | 8% | 8% | 8% |
| 2000 | 8% | 9% | 9% | 9% |
| 2001 | 9% | 8% | 7% | 7% |
| 2002 | 6% | 6% | 6% | 6% |
| 2003 | 5% | 5% | 5% | 4% |
| 2004 | 4% | 5% | 4% | 5% |
| 2005 | 5% | 6% | 6% | 7% |
| 2006 | 7% | 7% | 8% | 8% |
| 2007 | 8% | 8% | 8% | 8% |

| 2008 | 7% | 6% | 5% |

**The Pennsylvania Estate and Trust Cybrary**
Daniel B. Evans, Attorney at Law
P.O. Box 27370
Philadelphia, PA 19118
Telephone: (215) 233-0988
Email: dan@evans-legal.com